UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JULIAN DAYANA ARIAS,

                              Plaintiff(s),

        v.

AMERICA FIRST CREDIT UNION,

                              Defendant(s).

Case No.2:25-CV-2473  JCM (DJA)

ORDER

Presently before the court is defendant America First Credit Union ("AFCU")'s motion to compel arbitration, or in the alternative, to dismiss.  (ECF No. 8).  Plaintiff Dayana Arias ("plaintiff") filed a response (ECF No. 9), to which AFCU replied (ECF No. 14).

**I.      Background**

The parties are familiar with the specific details, but by way of background, plaintiff made a cash deposit at an AFCU ATM, but the machine allegedly malfunctioned and did not credit the funds. (ECF No. 1 at 2).  AFCU denied the plaintiff's dispute, reversed provisional credits, and closed her accounts.  (*Id.* at 1–3).  Plaintiff is now suing alleging AFCU mishandled the error resolution process in violation of Electronic Fund Transfer Act, 15 U.S.C. § 1693, et seq. ("EFTA"), and related common law claims.  (*Id.* at 1).

The court recently considered AFCU's motion to compel arbitration, but deferred ruling until AFCU supplemented its argument with the 2017 Membership & Account Agreement that plaintiff initially signed.  (ECF No. 17).  AFCU has provided said agreement (ECF No. 18), and the court can now rule on the motion to compel arbitration.

## II.     Legal Standard

"There is a strong presumption in favor of arbitrating a dispute where a valid and enforceable arbitration agreement exists between the parties." *SR Constr., Inc. v. Peek Bros. Constr., Inc.*, 510 P.3d 794, 798 (Nev. 2022) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Int'l Ass'n of Firefighters, Local No. 1285 v. City of Las Vegas*, 929 P.2d 954, 957 (1996)). "Nevada courts resolve all doubts concerning the arbitrability of the subject matter of a dispute in favor of arbitration." *Local No. 1285*, 929 P.2d at 957. "Nevada has a 'fundamental policy favoring the enforceability of arbitration agreements,' and [courts] 'liberally construe arbitration clauses in favor of granting arbitration.'" *Uber Techs., Inc. v. Royz*, 517 P.3d 905, 908 (Nev. 2022) (quoting *Tallman v. Eighth Jud. Dist. Court*, 359 P.3d 113, 118–19 (Nev. 2015)).

"Where the Federal Arbitration Agreement (FAA), 9 U.S.C. § 1–16, governs an arbitration agreement, state courts are compelled to follow that act and any federal law construing it." *Royz*, 517 P.3d at 907. "By its terms, the Act 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho. Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

"The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* (citing 9 U.S.C. § 4; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719–20 (9th Cir. 1999); *Rep. of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 477–78 (9th Cir. 1991)); *see also Ashbey v. Archstone Prop. Mgmt.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (stating that the party seeking to

compel arbitration has the burden to show both elements) (citing *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008)).

If the answer to both inquiries is yes, then the court must enforce the arbitration agreement's terms. *Id.* Courts are guided by a "presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs., Inc.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)).

**III.    Discussion**

A.  Whether a Valid Agreement Exists

AFCU's Compliance Manager submitted a declaration in support of AFCU's motion to compel arbitration. (ECF No. 18, Ex. A at 1). According to the declaration, plaintiff opened her membership account with AFCU on July 20, 2017. (*Id.* at 2). At the time plaintiff opened her account, the governing membership agreement in effect did not contain an arbitration clause. (*See* ECF No. 18, Ex. 1). However, the 2017 agreement contained the following language:

> **By signing the Membership Application** or completing and transmitting an online account authorization or service request that is a part of the Agreement, or by establishing and using this account, **each of you, jointly and severally, agree to the terms and conditions in this Agreement, including … any amendments which collectively govern your membership and accounts.** You agree that additional accounts and services you request in the future will be governed by this Agreement, as amended from time to time.

(*Id.* at 5) (emphasis added).

This language demonstrates that plaintiff, by signing the agreement, consented to be bound by any future amendments to the membership agreement. The agreement was subsequently amended to incorporate an arbitration provision and a class action waiver in

- 3 -

2019.[1] (*Id.*, Ex. 3 at 11–12).  A further amendment was made in January of 2025, and this is the version of the agreement that accompanied AFCU's motion to compel arbitration. (*See id.* at 4); (*see also* ECF No. 8, Ex. A).

When the arbitration clause was introduced in 2019, AFCU notified its members, including plaintiff.  (ECF No. 18, Exs. 5, 6).  AFCU delivered this notice through both email and physical mail.  (*Id.*); (ECF No. 18, Ex. A at 3).  The notices included opt-out provisions and instructions for declining acceptance of the arbitration terms.  (ECF No. 18, Exs. 5, 6).  AFCU's records indicate that plaintiff received the email version of the notice on July 11, 2019; she neither opted out nor discontinued her use of her AFCU accounts. (ECF No. 18, Ex. A at 3).

Because plaintiff agreed to be bound by amendments to AFCU's membership agreement, AFCU subsequently amended the agreement to include and arbitration clause, and plaintiff was notified of the change and afforded an opportunity to opt out—which she did not exercise—the court finds that a valid and enforceable arbitration agreement exists. *Chiron Corp.*, 207 F.3d at 1130.  The court now turns to the question of whether the agreement encompasses plaintiff's dispute.  *Id.*

B.  Whether the Agreement Encompasses the Dispute at Issue

Nevada has a strong policy favoring enforcement of arbitration agreements, and courts interpret arbitration clauses broadly.  *See Uber Techs., Inc.*, 517 P.3d at 908.  Moreover, the FAA requires courts to enforce arbitration agreements according to their terms unless congress provides

---

[1] AFCU states that "beginning in November 2019, the arbitration agreement was incorporated into paper version of the MAA as Section 28." (ECF No. 18, Ex. A at 2).  However, AFCU later elaborates on the notifications sent to members regarding the arbitration agreement being added, but states the change occurred in July of 2019. (*Id.* at 3).  The exact date is inconsequential, as the agreement was clearly amended in 2019 and predates the dispute before the court

- 4 -

otherwise.  *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012).

In this case, the membership agreement's arbitration clause provides that

[c]laims or disputes or disputes between You and Us **arising out of, affecting, or relating in any way** to Your Deposit Account(s) (Share Accounts) or the products and services , including electronic financial services, related to Your Accounts or any aspect of Your relationship with Us, are subject to arbitration, regardless of whether that dispute or the facts underlying or giving rise to that dispute arose before or after Your receipt of this notice.

(ECF No. 8, Ex. B at 10–11) (emphasis added).

The Ninth Circuit has addressed comparable language in *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999).  In that case, the court determined the phrase "arising in connection with" is sufficiently expansive to encompass all disputes between the parties that bear a significant relationship to the contract, as well as any disputes that find their origin in the contract.  *Id.* at 721.

Here, the arbitration clause is drafted with sufficient breadth to reach the dispute between plaintiff and AFCU.  Beyond the phrase "arising out of, affecting, or relating in any way," which alone would be enough to compel arbitration, the agreement expressly extended to issues involving "services, including electronic financial services."  (ECF No. 8, Ex. B at 11).  The EFTA unemphatically considers ATMs as a type of electronic financial service, meaning the arbitration clause's language encompasses disputes concerning AFCU's ATMs.  *See* 15 U.S.C. § 1693b.

Therefore, the arbitration clause in the membership agreement covers plaintiff's dispute. The court lacks discretion on this issue and is required to compel plaintiff to arbitrate.  *Chiron Corp.*, 207 F.3d at 1130.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that AFCU's motion to compel arbitration (ECF No. 8) be, and the same hereby is, GRANTED.

- 5 -

IT IS FURTHER ORDERED that AFCU's motion to dismiss (ECF No. 7) be, and the same hereby is, DENIED as moot.

DATED March 10, 2026.

_____

UNITED STATES DISTRICT JUDGE